**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JINETTE HIDALGO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u><br><br>**ECF CASE** |

Plaintiff Jinette Hidalgo ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, alleges the following based upon her own personal knowledge and the investigation of her counsel.

**PRELIMINARY STATEMENT**

1.  Defendant, Johnson & Johnson Consumer Companies, Inc. ("J&J" or "Defendant"), manufactures, markets, and sells Johnson & Johnson Bedtime Products, including JOHNSON'S® BEDTIME® Bath ("Bedtime Bath") and JOHNSON'S® BEDTIME® Lotion ("Bedtime Lotion") (collectively, "Bedtime Product(s)" or "Product(s)"), which purport to help a baby sleep better. Specifically, on the front of each bottle, there is a prominent logo that proclaims: "CLINICALLY PROVEN, HELP BABY SLEEP BETTER."[1] J&J also markets and advertises, on the back of the bottles, that it has created a "clinically proven" nighttime routine of

---

[1] A true and correct copy of the current product label for the Bedtime Lotion is attached hereto as Exhibit 1, and a true and correct copy of the current product label for the Bedtime Bath is attached hereto as Exhibit 2.

CLASS ACTION COMPLAINT

a warm bath, gentle massage (with the Products), and quiet activities that will help babies sleep better (e.g., reading, cuddling, and singing lullabies) (Exhibits 1, 2).

2. Since the introduction of the Bedtime Products, Defendant's nationwide advertising campaign for the Bedtime Products has been extensive, and Defendant has spent a significant amount of money to convey its deceptive messages to consumers throughout the United States and other parts of the world. Defendant has utilized a wide array of media to convey its deceptive claims about the Bedtime Products over time, including in television, magazines, the Internet, and on the Product labels. Through this massive marketing campaign, Defendant has worked to convey a singular message: the Bedtime Products are clinically proven to help babies sleep better. Each person who has purchased the Bedtime Products has been exposed to the advertising message and, in particular, the misleading labels, and purchased the Products as a direct result of that message.

3. Defendant's claims are deceptive and misleading, and have been designed to induce consumers to buy the Bedtime Products. Defendant knew or should have known, at the time it began selling the Products, that there are no studies showing that the Bedtime Products are clinically proven to provide any results, and Defendant has no basis to make the claims about its Products.

4. As a result of its deceptive conduct, J&J charges a premium of at least $1.00 for Bedtime Products over its other baby washes and lotions, which Plaintiff and other consumers paid (and continue to pay) with the specific understanding, based upon Defendant's false and misleading labeling, advertising, and pervasive representations, that using the Bedtime Products, either alone or in connection with the "clinically proven" nighttime routine, will help babies sleep better. As a result of seeing these false and misleading representations, Plaintiff and

consumers bought the Bedtime Products, paid more for the Bedtime Products than they otherwise would have paid absent the wrongful conduct, and have been damaged as a result of the wrongful conduct.

5. This class action seeks to provide redress to consumers in New York who have been harmed by the false and misleading marketing practices Defendant has engaged in with respect to the Bedtime Products. Defendant's conduct has included the systematic and continuing practice of disseminating false and misleading information throughout the United States via pervasive multi-media advertising and the Product packaging. These actions were and are intended to induce unsuspecting consumers, including Plaintiff and the members of the Class, into purchasing the more expensive Bedtime Products, which Products are not clinically proven at all, much less proven to have the benefits that are represented. Those very supposed benefits serve as the basis for consumers' decisions to purchase the Bedtime Products, instead of the less expensive J&J baby washes and lotions that have long been sold on the market and do not purport to provide such "clinically proven" benefits.

6. Plaintiff brings this action to obtain redress for those who have purchased the Bedtime Products. Plaintiff brings claims for violations of the New York General Business Law § 349 ("GBL") and for unjust enrichment.

7. Though this action, Plaintiff seeks injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class as a result of Defendant's unlawful conduct.

**JURISDICTION AND VENUE**

8. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. The amount in controversy exceeds the sum or value of $5,000,000, exclusive of

interest and other costs, and there is minimal diversity because certain members of the Class and Defendant are citizens of different states, as required by 28 U.S.C. § 1332(d)(2).

9. This Court has personal jurisdiction over Defendant because Defendant is authorized to do business, and currently does business, in this State.

10. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because Defendant engages in substantial business throughout this District and a substantial portion of the events and conduct giving rise to the violations alleged in this Complaint occurred in this District.

## THE PARTIES

11. Plaintiff is, and at all times relevant to this action has been, a resident and citizen of New York, New York.

12. J&J is a New Jersey corporation and, at all times relevant to this action, has maintained its principal place of business in Skillman, New Jersey. J&J, thus, is a citizen of New Jersey. J&J sold the Bedtime Products through retail stores, the Internet, and through television and other advertisements, all of which led consumers to purchase the Bedtime Products throughout the United States, including in New Jersey. J&J knew, or should have known, that the representations made regarding the Bedtime Products were false and misleading at the time that it began distributing the Bedtime Products in New York and the United States market.

## STATEMENT OF FACTS

**Facts Common to Plaintiff and the Class**

13. This class action is brought against J&J for the benefit and protection of all purchasers of the Bedtime Products in New York.

14. J&J launched its Bedtime Products in 2000.  As a general matter, many babies and toddlers have difficulty falling asleep and sleeping through the night.  Indeed, J&J's website indicates that "20-30 percent of babies experience regular sleep problems, including difficulty falling asleep and sleeping through the night."  Most parents, 76 percent, report a desire to change some aspect of their baby's sleep. http://www.johnsonsbaby.com/difference/baby-science#sleep.

15. Indeed, a majority of families report that sleep is the number one challenge they face.  *See* www.babycenter.com > Expert Advice, Americas Sleep Crisis, July 2012, http://www.babycenter.com/sleepstudy (last visited July 1, , 2015).

16. When Defendant introduced its Products, Defendant knew that its target audience would be eager to accept claims that the Products could help babies sleep better.  Defendant used this opportunity to lure customers into paying a premium price for the Product by making prominent representations in the marketing materials for the Products, and especially the front labels for the Products, that simply using the Products would help babies fall asleep more easily and sleep better.

17. J&J has had baby washes and lotions on the market for years.  J&J is not in the business of selling routines – it is in the business of selling its Products.  In order to sell more products and attempt to capitalize on this perceived market to improve baby's sleep, J&J introduced its Bedtime Products.  Indeed, J&J launched these Products and claimed it had expanded its **product line** to introduce new and innovative **products** to help a baby sleep better.

18. The Bedtime Products are known to customers only by the representations made about the Products by Defendant.  If, as is the case here, J&J sold other baby washes and lotions for infants and young children, then customers would have no reason to pay a premium to buy

CLASS ACTION COMPLAINT
5

the new products, *i.e.*, the Bedtime Products, unless and until they are exposed to Defendant's labeling and other pervasive messages about the purported properties and benefits of the Products.  The label itself, as well as the marketing material disseminated by Defendant, both make the false and misleading representations about the Product's benefits and properties.  In other words, given the existence of similar bath and skin lotion products, long sold by J&J, for washing and moisturizing a baby's skin, consumers would purchase the Bedtime Products if, **and only if**, they were exposed to Defendant's pervasive labeling and advertising campaign that these **new** Products did something that its others did not do – here, it is that the Bedtime Products were (and are) clinically proven to help baby sleep better.

19. For example, the Products themselves are touted by Defendant.  In its Infant Sleep Guide, which cites to its own "baby care experts" at J&J, Defendant stated that:

> Our new products, enriched with NATURALCALM™ essences, a unique blend of gentle ingredients and soothing aromas, can help your baby sleep better when used as part of a regular nightly routine. **JOHNSON'S® is the first and only brand that's clinically proven to help babies fall asleep easier and sleep through the night better**. To learn more about our products, visit JohnsonsBaby.com/sleep.

(emphasis added).[2]

20. Prior to January 2013, Defendant's websites provided. *inter alia*, Baby Sleep Guides, New Parent's Guide to Better Sleep, and various "studies" to support its misleading claims.  While the language on some of these materials has changed slightly between January 2013 and the present, the wording on the Product labelsshas remained constant to this day:  that the Bedtime Products are clinically proven to help babies sleep better.

---

[2] A true and correct copy of the Infant Sleep Guide is attached hereto as Exhibit 3.

21. The labeling and marketing communicates a persistent and material message and makes a common and pervasive representation that the Products are clinically proven to help babies sleep better. These core representations alleged to be false and misleading, that the Products themselves are clinically proven to help babies sleep better, are also all contained on the Product label itself for every purchaser to read.

22. On the front of the bottle of the Products, there is a prominent logo that proclaims: "CLINICALLY PROVEN, HELP BABY SLEEP BETTER." (Exhibits 1, 2.)[3]

23. J&J claims that its Bedtime Bath and Bedtime Lotion are clinically proven to help babies and toddlers fall asleep better, and are now labeled as able to help babies who have "trouble sleeping" achieve a "better night's sleep." (Exhibits 1-2.)

24. Therefore, Defendant expressly and impliedly represented that the Products were clinically proven to help baby sleep better.

25. As Defendant knows, however, contrary to the clear labeling and advertising, the Bedtime Products themselves are not clinically proven. .

26. J&J further states, on the back label of the Bedtime Product bottles, that it has also created a "clinically proven" nighttime routine of a warm bath (with the Products), gentle massage (with the Products), and quiet activities (e.g., reading, cuddling, and singing lullabies):

> Treat your baby to a bath **with JOHNSON'S® BEDTIME BATH®**, a gentle massage **with JOHNSON'S® BEDTIME LOTION®**, a few minutes of quiet time, and your baby will drift off to a better night's sleep.

(See Exhibits 1, 2)(emphasis added).  Thus, in addition to the false representation that the Products themselves are clinically proven, Defendant also has carefully created the misleading

---

[3] Although there have been minor variations of the label, since 2010, these same exact words have remained constant.

CLASS ACTION COMPLAINT

7

and deceptive impression that consumers can use the clinically proven Product and the clinically proven "nighttime routine" to help baby sleep better.

27. Throughout the relevant time period, Defendant has marketed the Products using uniformly deceptive advertising and packaging. Likewise, the labeling and marketing for the Bedtime Lotion and Bedtime Bath contain substantially the same message. A typical label promises that:

    a. the Products are "CLINICALLY PROVEN, HELP BABY SLEEP BETTER" (Exhibits 1, 2);

    b. the Products help your baby fall asleep easier and sleep through the night better (Exhibits 1, 2); and

    c. the nighttime routine is clinically proven to help babies and toddlers sleep better (Exhibits 1, 2).

28. At no time, however, either in its labels, advertising, or so-called clinical studies, does J&J attempt to sell the routine, or to describe the use of the routine or its studies, without also including the Bedtime Products in the description of the routine and in the description of the studies. Nor would one expect it to, since Defendant does not sell routines – it sells the Bedtime Products. *See* http://www.johnsonsbaby.com/difference/baby-science#sleep.

29. Not surprisingly, and consistent with its goal of selling **products** (not routines), Defendant has recently added a new **product** to its line - the JOHNSON'S® Baby BEDTIME® Washcloths. The front of the package proclaims that the washcloths are "clinically proven help baby sleep better."[4] The label also states that the customer should "Try our other JOHNSON'S® Baby BEDTIME® **products** to help baby sleep better." (Exhibit 4) (emphasis added).

---

[4] A true and correct copy of the product box and label for the washcloths is attached hereto as Exhibit 4.

30. Defendant has also repeated its unfair and/or deceptive representations about its Products on its websites: www.johnsonsbaby.com, www.jnj.com, and www.johnsonsprofessional.com.  The content of the websites contains materially the same message about the Products that Defendant has put on the labels of the Bedtime Products and disseminated since its launch.

31. Defendant's website advertising states that the Products are formulated with NATURALCALM™, a "special blend of calming aromas."[5] *See also* https://www.johnsonsbaby.com/babywash/johnsons-bedtime-lotion (NATURALCALM™ is a special blend of gentle and calming aromas).

32. At some point since January 2013, Defendant changed this language from its prior representation, that it was a "unique blend of patent pending essences that has been tested and proven to have relaxing properties."  In fact, since the time of the introduction of the Bedtime Products, J&J has claimed that NATURALCALM™ is a "patent-pending blend of gentle and soothing aromas" proven to promote calming and a relaxed state.[6]

33. However, Defendant is well aware that the patent for NATURALCALM™ was never tested with babies or children.

34. Defendant also states that the Bedtime Lotion is "clinically shown to last all night long." (Exhibit 5).

35. Since the launch of the Products and to the present, J&J has consistently and uniformly stated on its labeling and in its other advertisements that the Products are clinically

---

[5] A true and correct copy of the website page from 2014 is attached hereto as Exhibit 5.

[6] A true and correct copy of the product label for Bedtime Lotion is attached hereto as Exhibit 6, and a true and correct copy of the product label for the Bedtime Bath is attached hereto as Exhibit 7.  Both were in or around January, 2013, but were changed sometime between that date and the present.

CLASS ACTION COMPLAINT

9

proven to help babies sleep better. J&J intended the statement to appear scientific and give the claims a special significance, when in reality, J&J knew that the Products themselves are not clinically proven.

36. J&J did not test the "routine" with products other than the Bedtime Products, such as J&J's long-sold ordinary bath products, another company's products, or with no products at all.

37. In the United Kingdom, a challenge to the advertising of the very claims at issue here found that Defendant's advertising was "likely to mislead" as Defendant failed to show that it was the use of the Products in the suggested routine that was proven to help babies sleep better and because the advertising did not make clear that the routine had only been tested on babies over seven months old. The Advertising Standards Authority Council "told them to ensure that any similar advertising did not suggest that Johnson's products, as part of the bedtime routine, had been proven to help babies sleep better and to make clear that the routine had been proven to work only for babies over seven months old." *See* ASA Adjudication on Johnson & Johnson Ltd, Apr. 30, 2008, formerly available at http://www.asa.org.uk/ASA-action/Adjudications/2008/4/Johnson- and-Johnson-Ltd/ TF_ADJ_44345.aspx.[7]

38. All of these representations made by J&J on the Product labels are deceptive, false, and misleading. Moreover, as a result of these representations, Defendant was able to sell, to Plaintiff and other consumers, the Bedtime Products at a premium over its plain baby lotion and wash products (*e.g.*, JOHNSON'S® Baby Lotion, JOHNSON'S® Baby Wash, or other comparable name brand products), which cost at least twenty-five percent (25%) less than the

---

[7] A true and correct copy of the decision is attached hereto as Exhibit 8.

Bedtime Products. In other words, Plaintiff purchased the Products at a premium price over other baby bath and lotion products.

39.     Had Plaintiff and other members of the proposed Class been aware of the truth, they would not have purchased the more expensive Bedtime Products or would have paid substantially less for them.

**Plaintiff's Experiences**

40.     Plaintiff's claims are based on the Products' labels. Within the past 5 years, Plaintiff, while shopping for baby wash, viewed the claims on the label of the bottles of the Bedtime Products. In particular, at a Walmart store in White Plains, New York, Plaintiff recalls reading Defendant's claims on the labels that the Products were better than the other J&J products because these Products (and only these Products) were "clinically proven" to help babies sleep better.

41.     Plaintiff also noticed that the labels of other baby wash and lotion products, including J&J's long-sold regular products and other brand name products, did not contain claims that the products were "clinically proven" to help babies sleep better. As a result, the labels on the Products convinced Plaintiff to purchase the Bedtime Products, instead of any other similar baby wash and lotion products, to help her babies sleep better.

42.     In reliance on the label's claims that the Bedtime Products were clinically proven to help her babies sleep better, Plaintiff purchased the Bedtime Products for a premium price, at the Walmart store located at 275 Main St in White Plains, New York.

43.     Plaintiff used the Bedtime Bath, in conjunction with the Bedtime Lotion, in accordance with J&J's 3-step routine.

44. The labeling of the Product bottles, and the representations therein, were made by Defendant. Reasonably relying on the claims made on the labeling of the bottles, Plaintiff purchased the Products. Plaintiff reasonably expected that the Products would work as advertised and sold and, thus, used the Bedtime Products as directed.

45. After using the Bedtime Products as part of the 3-step nightly routine for a period of time with her children, Plaintiff discontinued use, as she determined that the use of the Bedtime Products (included in the "routine") did not help her babies sleep any better.

46. Plaintiff suffered actual damages and loss, in the amount of the total price of the Bedtime Products purchased and/or the price premium of the Products, as a result of the improper actions described herein.

47. Defendant's false, misleading, and deceptive misrepresentations and omissions, as described herein, are likely to continue to deceive and mislead reasonable consumers and the general public.

48. In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for the Products over comparable products that did not make such claims about helping babies sleep better.

## CLASS ALLEGATIONS

49. Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, seeking injunctive and other relief on behalf of herself and other similarly situated members of the class, defined as: All persons who purchased the Bedtime Products within New York, not for resale or assignment.

50. Specifically excluded from the Class are: (a) Defendant, its officers, directors, agents, trustees, corporations, trusts, representatives, employees, principals, servants, partners,

joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or their officers and/or directors, or any of them; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Bedtime Products; and (c) the Judge to whom this case is assigned.

51. Numerosity/Impracticability of Joinder. The members of the Class are so numerous that joinder of all members is impracticable. The proposed Class includes thousands of members. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody, and control, or otherwise obtained through reasonable means.

52. Typicality. The representative Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent. Plaintiff and all members of the Class purchased the Products at a premium price and have sustained damages arising out of the same wrongful course of conduct. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

53. Commonality and Predominance. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendant engaged in a pattern of fraudulent, deceptive, and misleading conduct targeting the public through the marketing, advertising, promotion, labeling, and/or sale of the Bedtime Products;

    b. Whether Defendant made material misrepresentations of fact or omitted to state material facts to Plaintiff and the Class regarding the marketing, promotion, advertising, and sale of the Bedtime Products, which material misrepresentations or omissions operated as a fraud and deceit upon Plaintiff and the Class;

   c. Whether Defendant's false and misleading statements of fact and concealment of material facts regarding the Bedtime Products were intended to deceive the public;

   d. Whether, as a result of Defendant's misconduct, Plaintiff and the Class are entitled to equitable and other relief, and, if so, the nature of such relief;

   e. Whether Plaintiff and the members of the Class have sustained loss and damages as a result of Defendant's acts and omissions, and the proper measure thereof; and

   f. Whether such a failure violates statutory and common law prohibitions against such conduct, as detailed more fully below.

54. **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously.  Plaintiff is a member of the Class and does not have interests antagonistic to, or in conflict with, the other members of the Class.

55. **Superiority.**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since, among other things, individual litigation and/or joinder of all members of the Class is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by individual Class members as a result of Defendant's wrongful conduct alleged herein are too small to warrant the expense of individual litigation.  The likelihood of individual Class members prosecuting their own separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions and individualized litigation would present the potential for varying, inconsistent, or contradictory

judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff does not foresee any difficulty in the management of this litigation that would preclude its maintenance as a class action.

56. Adequate notice can be given to Class members directly using information maintained in Defendant's records, or through notice by publication.

57. The Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted on grounds generally applicable to the putative Class members, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

58. The Class may be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to Class members will predominate over questions affecting individual members, and a class action is superior to all other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

59. Plaintiff reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Violation of the New York General Business Law § 349)**

60. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

61. As detailed more fully herein, Defendant engaged in deceptive acts and practices by falsely and misleadingly marketing its Products to consumers, including through the use of false and misleading Product labeling.

62. As fully alleged above, by advertising, marketing, distributing, and/or selling the Products to Plaintiff and the other members of the Class, Defendant engaged in and continues to engage in deceptive acts, practices, and omissions.

63. Defendant has engaged in deceptive practices in the sale of the Bedtime Bath Products because Defendant knew that it had purposely marketed and sold the Bedtime Bath Products in a manner that made Plaintiff and reasonable consumers believe that the Bedtime Bath Products themselves were clinically proven to help babies sleep better and were also part of a "routine" that was clinically proven to help babies sleep better.

64. Defendant has engaged in deceptive practices in the sale of the Bedtime Bath Products because Defendant knew that the Product was not clinically proven and no clinical studies demonstrate that the Bedtime Bath Products are clinically proven to help, or will help babies sleep better.

65. Defendant has engaged in deceptive practices in the sale of the Bedtime Bath Products because Defendant knew that no clinical studies demonstrate that using the Bedtime Bath Products with the 3-step routine is any more effective at helping babies sleep better than using the 3-step routine without the Bedtime Bath Products.

66. Similarly, Defendant also failed to disclose material facts regarding the Bedtime Bath Products to Plaintiff and members of the Class -- namely, that no clinical studies demonstrate that using the Bedtime Bath Products will help babies sleep better and that no clinical studies demonstrate that using the 3-step routine with Bedtime Bath Products is any more

effective at helping babies sleep better than using the 3-step routine without the Bedtime Bath Products.

67. Defendant's unconscionable conduct described herein included its false representations and the omission and concealment of material facts concerning the Bedtime Bath Products and their lack of efficacy.

68. Defendant intended that Plaintiff and the other members of the Class rely on these acts of concealment and omissions, so that Plaintiff and other Class members would purchase the Bedtime Bath Products.

69. The false and misleading representations were intended to, and likely to, deceive a reasonable consumer.

70. The facts not disclosed would be material to the reasonable consumer, and are facts that a reasonable consumer would consider important in deciding whether to purchase the Products and how much to pay.

71. Defendant's representations and omissions were, and are, material to reasonable consumers, including Plaintiff, in connection with their respective decisions to purchase the Products.

72. Had Defendant not engaged in false and misleading advertising regarding the Bedtime Bath Products, Plaintiff and other members of the Class would not have purchased the Bedtime Bath Products.

73. Had Defendant disclosed all material information regarding the Bedtime Bath Products to Plaintiff and other members of the Class, they would not have purchased the Bedtime Bath Products.

74.     Plaintiff and the other members of the Class further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the Class members will be irreparably harmed unless the unlawful actions of the Defendant is enjoined in that Defendant will continue to falsely and misleadingly advertise the Products as providing certain sleep benefits over other products, as detailed more fully herein, when in fact the Products do not.  Absent injunctive relief, Defendant will continue to manufacture and sell the Products using the misrepresentations described herein, to the detriment of consumers.

75.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of New York General Business Law § 349, and Defendant is liable to Plaintiff and the other members of the Class for the actual damages that they have suffered as a result of Defendant's actions.  The amount of such damages is to be determined at trial, but will not be less than $50.00.  Therefore, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

**(Unjust Enrichment under New York Common Law)**

76.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

77.     As a result of Defendant's deceptive, fraudulent, and misleading labeling of the Products, Defendant was enriched at the expense of Plaintiff and the other Class members, through the payment of the purchase price for Defendant's Products.

78.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other Class members in light of the fact that the Products purchased by Plaintiff and the other Class

members were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other Class members for the monies paid to Defendant for such Products.

79. Therefore, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

THEREFORE, Plaintiff respectfully requests relief as follows:

A. an order certifying the proposed Class herein under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3); appointing Plaintiff as representative of the Class; and appointing her undersigned counsel as Class Counsel;

B. a declaration that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. declaratory and injunctive relief pursuant to section 349 of the New York General Business Law, without limitation;

D. monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law with respect to the common law claims alleged;

E. statutory damages in the maximum amount provided by law;

F. punitive damages in accordance with proof and in an amount consistent with applicable precedent;

G. an award of the reasonable costs and expenses of suit, including attorneys' fees for Plaintiff and the Class; and

H. any further relief that the Court may deem appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 2, 2015                                THE RICHMAN LAW GROUP

*[signature]*

Kim E. Richman
195 Plymouth Street
Brooklyn, NY 11201
krichman@richmanlawgroup.com
(212) 687-8291 (t)
(212) 687-8292 (f)

James C. Shah
Natalie Finkelman Bennett
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com
          nfinkelman@sfmslaw.com

Jayne A. Goldstein
**POMERANTZ LLP**
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
Telephone: (954) 315-3454
Email:  jagoldstein@pomlaw.com

*Counsel for Plaintiff and Proposed Class Counsel*