UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

JINETTE HIDALGO, on behalf of herself
and all others similarly situated,

               **Plaintiff,**

       **- against -**

JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.,

             **Defendant.**

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/8/15

**OPINION AND ORDER**

**15-cv-5199 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On July 2, 2015, Jinette Hidalgo filed a putative class action alleging that Johnson & Johnson Consumer Companies, Inc. ("J&J") had engaged in deceptive marketing practices with respect to certain of its products, including Bedtime Bath and Bedtime Lotion (collectively, the "Bedtime Products"). Hidalgo's two claims – brought under New York General Business Law Section 349 ("Section 349") and state common law – focus on J&J labels and advertisements indicating that the Bedtime Products are "clinically proven" to help

babies sleep better.[1]

On October 1, 2015, J&J moved to (1) dismiss Hidalgo's request for injunctive relief and other aspects of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure; (2) strike Hidalgo's class allegations pursuant to Rule 12(f) of the Federal Rules of Civil Procedure; and (3) dismiss both of Hidalgo's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  For the following reasons, the motions to dismiss under Rules 12(b)(1) and 12(b)(6) are GRANTED in part and DENIED in part, and the motion to strike under Rule 12(f) is DENIED in full.

## II.    BACKGROUND[3]

### A.    Bedtime Products Labels and Advertisements

The Complaint alleges that "[s]ince the launch of the [Bedtime] Products to the present, J&J has consistently and uniformly stated on its labeling

---

[1]    This Court has original jurisdiction over this case under the Class Action Fairness Act of 2005.  *See* 28 U.S.C. § 1332(d)(2).  As alleged in the Complaint ("Compl."), the amount in controversy exceeds $5,000,000, and there is minimal diversity because defendant and certain members of the class are citizens of different states.  *See id.*

[2]    Although J&J does not cite any statutory bases for its motion, the Court has construed J&J's arguments as seeking applicable relief under these Rules.

[3]    The following background is drawn from the Complaint.

and in other advertisements that the Products are clinically proven to help babies sleep better."[4]  However, the Complaint alleges, J&J "knew that the [Bedtime] Products themselves are not clinically proven"[5] but were subjected to clinical tests only as part of a three-step routine of bath, massage, and quiet time outlined on the back of Bedtime Products bottles and other J&J marketing materials.[6]  The Complaint further alleges that based on these "clinically proven" representations, J&J was able to sell the Bedtime Products at a premium of at least 25 percent over its "plain baby lotion and wash products."[7]

### B.    Hidalgo's Purchase and Use of the Bedtime Products

Hidalgo's "claims are based on the [Bedtime] Products' labels."[8]  She asserts that, while shopping for baby wash "within the past five years,"[9] she read J&J's labeling that the Bedtime Products were "clinically proven" to help babies sleep better and that, based on these representations, purchased the Bedtime

---

[4]      Compl. ¶ 35.

[5]      *Id.*

[6]      *Id.* ¶ 36.

[7]      *Id.* ¶ 38.

[8]      *Id.* ¶ 40.

[9]      *Id.*

Products for a premium price.[10]  Hidalgo "used the Bedtime Bath, in conjunction with the Bedtime Lotion, in accordance with [the] 3-step routine" described on the Bedtime Products bottles.[11]  However, "[a]fter using the Bedtime Products as part of the 3-step nightly routine for a period of time with her children, [she] discontinued use" upon determining the Products to be ineffective in helping her children sleep.[12]  The Complaint states that had J&J "not engaged in false and misleading advertising" and "disclosed all material information regarding the [Bedtime Products], . . . [Hidalgo] would not have purchased the [Bedtime Products]."[13]

### C.    Class Allegations  and Claims for Relief

Hidalgo seeks to assert her claims on behalf of herself and "[a]ll persons who purchased the Bedtime Products within New York, not for resale or assignment."[14]  The Complaint "seeks injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all

---

[10]    *See id.* ¶¶ 40-42.

[11]    *Id.* ¶¶ 26, 40.

[12]    *Id.* ¶ 45.

[13]    *Id.* ¶¶ 72-73.

[14]    *Id.* ¶ 49.

4

other relief available to the Class."[15]

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1) Motion to Dismiss for Lack of Standing

#### 1.   Generally

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[16]  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."[17]  "Thus, to survive . . . [a] Rule 12(b)(1) motion to dismiss, [a plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue."[18]  However, "[w]hen standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'"[19]

#### 2.   Article III Standing

---

[15]   *Id.* ¶ 7.

[16]   *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[17]   *Id.*

[18]   *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

[19]   *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)) (further citations omitted).

"Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'"[20]  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit."[21] Article III's "irreducible constitutional minimum of standing contains three elements":[22]

> First, the plaintiff must have suffered an 'injury in fact' . . . which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical. . . . Second, . . . the injury has to be fairly trac[eable] to the challenged action of the defendant. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[23]

However, "[a] plaintiff seeking injunctive . . . relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."[24]  Accordingly, in actions brought under consumer

---

[20]     *Amidax*, 671 F.3d at 145 (quoting United States Const. art. III § 2).

[21]     *Id.* (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (alteration in original) (further quotation omitted)).

[22]     *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[23]     *Id.* at 560-61 (quotation marks and citations omitted) (alterations in original).

[24]     *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)).

protection statutes, many courts have declined to find Article III standing for injunctive relief where the plaintiff "demonstrated that she is, in fact, unlikely to purchase [the challenged] products again."[25]

Further, Article III standing is a separate issue from that of "class standing."[26]   Article III "[s]tanding cannot be acquired through the back door of a class action."[27]   Rather, "the named class plaintiffs must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."[28]   Thus, "'for every named defendant there must be at least one named

---

[25]      *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014).  *Accord Vaccariello v. XM Satellite Radio*, 295 F.R.D. 62, 68 (E.D.N.Y. 2013); *In re Con Agra Foods, Inc.*, 90 F. Supp. 3d 919, 979 (C.D. Cal. 2015); *Morgan v. Wallaby Yogurt Co.*, No. 13 Civ. 0296, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014).  *But see Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (finding Article III standing to seek injunctive relief where plaintiff unlikely to purchase offending product again); *Henderson v. Gruma Corp.*, No. 10 Civ. 4173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) (same).

[26]      *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012).

[27]      *Wallace v. Ahearn*, No. 13 Civ. 2520, 2014 WL 4659307, at *9 (E.D.N.Y. July 15, 2014) (quoting *Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Burger, C.J., concurring in part and dissenting in part)).

[28]      *Central States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005) (quotation marks and citations omitted).

plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.'"[29]

**B.      Rule 12(f) Motion to Strike Class Allegations**

**1.      Generally**

Rule 12(f) provides that a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."[30]  However, "[m]otions to strike under Rule 12(f) are rarely successful"[31] – particularly in the class-action context where such a motion "'requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which

---

[29]      *Central States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007) (quoting 1 Newberg on Class Actions § 2:6 n.3 (4th ed. 2002)).

[30]      Additionally, Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."

[31]      *Reynolds v. Lifewatch, Inc.*, No. 14 Civ. 3575, 2015 WL 5730792, at *4 (S.D.N.Y. Sept. 29, 2015). *Accord Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) ("[M]otions to strike are viewed with disfavor and infrequently granted." (quotation marks omitted)).

they would otherwise be entitled on questions relevant to class certification.'"[32]

"Put differently, motions to strike class allegations are often denied as

premature.'"[33]   Accordingly, "to succeed on a motion to strike class allegations, a

defendant must 'demonstrate from the face of the [c]omplaint that it would be

impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may

be able to obtain during discovery."[34]   In other words, "a motion to strike that

addresses issues separate and apart from the issues that will be decided on a class

certification motion is not procedurally premature."[35]

## 2.    Class Standing

The Second Circuit has held that "[i]n a putative class action, a

plaintiff has class standing if [s]he plausibly alleges (1) that [s]he 'personally has

suffered some actual . . . injury as a result of the putatively illegal conduct of the

defendant'[36] . . . and (2) that such conduct implicates the 'same set of concerns' as

---

[32]    *Reynolds*, 2015 WL 5730792, at *4 (quoting *Belfiore*, 94 F. Supp. 3d at 447) (further citations omitted).

[33]    *Id.*

[34]    *Id.*  (alterations in original) (quoting *Mayfield v. Asta Funding*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015)).

[35]    *Chen-Oster v. Goldman Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quotation marks and citation omitted).

[36]    *NECA-IBEW*, 693 F.3d at 162 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)).

the conduct alleged to have caused injury to other members of the putative class by the same defendants."[37]

## C.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

### 1.    Generally

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."[38]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[39]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not

---

[37]     *Id.* (quoting *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)).  *Accord id.* ("[I]n the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement.  Whether that conduct implicates the same set of concerns for distinct sets of plaintiffs, however, will depend on the nature and content of the specific misrepresentation alleged."); *In re Frito-Lay N.A., Inc. All Natural Litig.*, No. 12 MD 2413, 2013 WL 4647512, at *13 (E.D.N.Y. Aug. 29, 2013) ("Whether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products – and whether plaintiffs will therefore adequately represent the interests of the class – is a question the Court will consider on a Rule 23 certification motion.").

[38]     *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[39]     *See* 556 U.S. 662, 678-79 (2009).

entitled to the assumption of truth."[40]  For example, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."[41]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief."[42]  A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[43]  Plausibility

requires "more than a sheer possibility that a defendant has acted unlawfully."[44]

When deciding a 12(b)(6) motion to dismiss, "the Court is entitled to consider facts

alleged in the complaint and documents attached to it or incorporated in it by

reference, documents 'integral' to the complaint and relied upon it, and facts of

which judicial notice may properly be taken."[45]

    2.    **Statute of Limitations Defense**

---

[40]    *Id*. at 679.

[41]    *Id*. at 678 (citation omitted).

[42]    *Id*. at 679.

[43]    *Id*. at 678 (citation omitted).

[44]    *Id*. (quotation marks omitted).

[45]    *Heckman v. Town of Hempstead*, 568 Fed. App'x 41, 43 (2d Cir. 2014) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)) (further citation omitted).

"Timeliness is 'material when testing the sufficiency of a pleading.'"[46] Accordingly, "[d]ismissal under [Rule] 12(b)(6) is appropriate when a defendant raises . . . [a statutory bar] as an affirmative defense and it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law."[47]

### D.   Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, a party may amend its pleading "only with the opposing party's written consent or the court's leave."  Although "[t]he court should freely give leave when justice so requires,"[48] it is "'within the sound discretion of the district court to grant or deny leave to amend.'"[49]  When a motion to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[50]

---

[46]   *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (quoting Fed. R. Civ. P. 9(f)).

[47]   *Id.  Accord Estate of Leventhal ex rel. Bernstein v. Wells Fargo Bank*, No. 14 Civ. 8751, 2015 WL 5660945, at *7 (S.D.N.Y. Sept. 25, 2015) (declining to "decide [on motion to dismiss] whether Plaintiff's claims [were] time-barred because it [was] not clear on the face of the Complaint when . . . those claims began to accrue").

[48]   Fed. R. Civ. P. 15(a)(2).

[49]   *Franconero v. UMG Recordings, Inc.*, 542 Fed. App'x 14, 17 (2d Cir. 2013) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

[50]   *Heckman*, 568 Fed. App'x at 43 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to amend is futile and should be denied.[51]

## IV.   APPLICABLE LAW

### A.   Section 349

"New York General Business Law § 349, a consumer protection measure, provides, in relevant part:  '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful.'"[52] "Claims under Section 349 are . . . subject to the . . . notice-pleading requirements of [Rule 8 of the Federal Rules of Civil Procedure]."[53] "To state a *prima facie* claim under . . . Section [349], a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice."[54] "The New York Court of

---

[51]     *See Smith v. United States*, 554 Fed. App'x 30, 32 (2d Cir. 2013).

[52]     *Dimond v. Darden Rests.*, No. 13 Civ. 5244, 2014 WL 3377105, at *4 (S.D.N.Y. July 9, 2014).

[53]     *Tomasino*, 44 F. Supp. 3d at 257 (quotation marks omitted).

[54]     *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (citations omitted).

Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"[55] "A court may make this determination as a matter of law, although usually such a determination is a question of fact."[56] "A plaintiff adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product based on the allegedly misleading representations."[57]

Generally, "[a]ctions brought pursuant to Section 349 must be commenced within three years of the date of accrual."[58] "[F]or purposes of a Section 349 claim, "accrual is not dependent on discovery of either injury or its specific cause" but "occurs when Plaintiff first suffered injury."[59] Equitable tolling "is applied only in rare circumstances when the defendant's fraudulent conduct either conceals the existence of a cause of action or acts to delay Plaintiff from

---

[55] *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)).

[56] *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (citations omitted).

[57] *Koenig v. Boulder Brands*, 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) (citations omitted).

[58] *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. 2014).

[59] *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011).

commencing a lawsuit."[60]

## B.   Unjust Enrichment

"To state a claim for unjust enrichment [under New York law], a plaintiff must plead that (1) the defendant was enriched (2) at the plaintiff's expense and (3) under the circumstances of such enrichment equity and good conscience require the defendant to make restitution."[61]  However, "unjust enrichment is available as a cause of action only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."[62]  Put differently, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."[63]

## V.   DISCUSSION

### A.   Rule 12(b)(1) Motion to Dismiss for Lack of Standing

---

[60]   *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 647 (E.D.N.Y. 2012).

[61]   *Goldemberg*, 8 F. Supp. 3d at 483.

[62]   *Id.* (quotation marks and citation omitted).

[63]   *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). *Accord Trend & Style Asia HK Co. v. Pacific Worldwide, Inc.*, No. 14 Civ. 9992, 2015 WL 4190746, at *6 (S.D.N.Y. July 10, 2015) ("[I]f the . . . Defendants admit that there was a contract even while denying liability under it, then the Court will dismiss as duplicative the quasi-contract allegations.")

The Court will first consider J&J's jurisdictional arguments that Hidalgo, in her individual capacity, lacks Article III standing to seek injunctive relief, pursue claims accruing prior to 2010, or assert claims based on advertising other than J&J's labeling of the Bedtime Products.

### 1.     Injunctive Relief

A plaintiff lacks standing to bring an action for injunctive relief when, as here, she does not allege that she will suffer any future injury as a result of defendant's continued conduct.[64]  As the Complaint contains no allegations that Hidalgo intends to purchase the Bedtime Products again, she has not plausibly alleged future injury from these products.[65]

Furthermore, amendment would be futile given that the Complaint effectively asserts that regardless of whether J&J's allegedly deceptive practices are enjoined, Hidalgo will refrain from purchasing the Bedtime Products.

---

[64]     *See, e.g.*, *Deshawn E.*, 156 F.3d at 344; *Tomasino*, 44 F. Supp. 3d at 256; *Vaccariello*, 295 F.R.D. at 68; *In re Con Agra Foods*, 90 F. Supp. 3d at 979; *Morgan*, 2014 WL 1017879, at *6.

[65]     The Second Circuit has not opined on whether a plaintiff maintains standing to seek injunctive relief for consumer protection claims when she admits that she will not re-purchase the challenged products.  Hidalgo points to a few district court cases that have found standing under these circumstances. *See, e.g.*, *Belfiore*, 94 F. Supp. 3d at 445; *Henderson*, 2011 WL 1362188, at *7.  This Court, however, finds those cases to be irreconcilable with Article III's firm injury-in-fact requirement – a bedrock limitation on the jurisdiction of the federal courts.  *See Lujan*, 504 U.S. at 559; *Lyons*, 461 U.S. at 105-06.

Specifically, the Complaint states that had J&J "not engaged in false and misleading advertising" and "disclosed all material information regarding the [Bedtime Products], . . . [Hidalgo] would not have purchased the [Bedtime Products]."[66]   Accordingly, Hidalgo's claim for injunctive relief is dismissed with prejudice.

### 2. Claims Arising from Pre-2010 Purchases or Advertisements Other than Bedtime Products Labeling

J&J also challenges Hidalgo's individual standing to assert claims arising out of pre-2010 purchases of the Bedtime Products or based on advertising other than the labels on J&J's Bedtime Product bottles (such as Internet advertisements).[67]   J&J does not dispute that Hidalgo has alleged injury based on her past purchases.   Rather, J&J argues that because the Complaint alleges that Hidalgo's purchases were made after 2010 and based solely on the Bedtime

---

[66]     Compl. ¶¶ 72-73.

[67]     J&J also apparently challenges Hidalgo's individual standing to pursue claims based on post-2013 purchases, citing the Complaint's allegation that J&J changed relevant language on some advertising materials "sometime between [January 2013] and the present."   Compl. ¶ 32 n.6.   This argument is a red herring, as the Complaint further alleges that even after this change, the "clinically proven" representation continued to appear on the Bedtime Products' labels.   *See id.* ¶ 20 ("While the language on some of these [advertising] materials has changed slightly between January 2013 and the present, *the wording on the Product labels has remained constant to this day*: that the Bedtime Products are clinically proven to help babies sleep better." (emphasis added)).

Products labeling, she cannot pursue claims outside the scope of her own purchases.  Unlike the injunctive relief claim, however, neither the time period nor marketing impetus of Hidalgo's purchases undermines Article III's requirement that she suffered an actual injury.  Instead, these arguments go to the scope of the putative class and thus, are properly considered under Rule 12(f), not Rule 12(b)(1).[68]

### B.  Rule 12(f) Motion to Strike Class Allegations

The only remaining issue is J&J's standing-related arguments under Rule 12(f) – namely, those regarding Hidalgo's standing to represent a class pursuing claims arising out of pre-2010 purchases or advertising other than the Bedtime Products labels.[69]  Hidalgo seeks to represent a single class, defined as "[a]ll persons who purchased the Bedtime Products within New York not for resale or assignment."[70]  J&J urges the Court to find that Hidalgo – whom the Complaint alleges purchased Bedtime Products only after 2010 and on the basis of the Bedtime Products labels – lacks class standing to represent the putative class as

---

[68]     *See NECA-IBEW*, 693 F.3d at 162.

[69]     J&J similarly attempts to challenge Hidalgo's class standing to pursue claims arising out of post-2013 purchases due to the alleged change in J&J advertising.  This argument fails for the reason stated at note 67, *supra*.

[70]     Compl. ¶ 49.

defined.  But because the parties have not yet had the opportunity to conduct

discovery about whether Hidalgo's injuries "implicate[] the 'same set of concerns'

as the conduct alleged to have caused injury to other members of the putative

class," J&J's motion to strike the class allegations is denied as premature.[71]  J&J

may re-assert these arguments, if applicable, at the class certification stage.

### C.    Rule 12(b)(6) Motion to Dismiss For Failure to State a Claim

#### 1.    Section 349 Claim

J&J offers two arguments in support of its position that the Section

349 claim should be dismissed for failure to state a claim – neither of which is

persuasive.[72]  *First*, J&J argues that this claim should be dismissed as time-barred

under the applicable three-year statute of limitations, given that the Complaint

broadly alleges that Hidalgo purchased the Products "within the past five years."[73]

Because timeliness is an affirmative defense, however, it constitutes grounds for

dismissal at the pleadings stage only where the defense is clear from the face of the

---

[71]    *NECA-IBEW*, 693 F.3d at 162 (quoting *Gratz*, 539 U.S. at 267).

[72]    J&J also submits sources outside the Complaint in support of its
position (including Internet reviews of the Bedtime Products and filings from other
cases).  The Court declines to consider these materials in deciding this motion, as
they are neither part of Hidalgo's Complaint nor integral to her claims.  *See
Heckman*, 568 Fed. App'x at 43.

[73]    Compl. ¶ 40.

Complaint.[74]  Hidalgo's allegation that she purchased the Bedtime Products

"within the past five years" does not clearly establish that the relevant purchases

occurred *more than* three years before the Complaint was filed.  Nor does the

Complaint establish that equitable tolling of the statute of limitations would be

unavailable.  Thus, although discovery may ultimately prove otherwise, it is

premature to dismiss the Section 349 claim as untimely.

*Second*, J&J argues that the Complaint fails to plausibly allege that

J&J's representations about the Bedtime Products were "materially misleading" –

and thus, likely to mislead a reasonable customer – as required to support this

cause of action.[75]  The Complaint does, however, allege material misrepresentation

sufficient to sustain the Section 349 claim.  The crux of Hidalgo's Section 349

claim is that the "clinically proven" representations were misleading because

"contrary to the[ir] clear labeling and advertising, the Bedtime Products *themselves*

are not clinically proven."[76]  Rather, the Complaint alleges, it was the combined

three-step bedtime routine that was clinically tested by J&J.[77]  Accordingly, the

---

[74]     *See Staehr*, 547 F.3d at 425.

[75]     J&J does not challenge the Complaint's sufficiency with respect to
any other element of the Section 349 claim.

[76]     Compl. ¶ 25 (emphasis added).

[77]     *See, e.g.*, *id.* ¶¶ 21, 25-26, 28, 36.

20

Complaint plausibly alleges that, based on these "clinically proven" representations, a reasonable customer could have been misled into believing that the Bedtime Products, in isolation, had been clinically proven as a sleep aid.

       In support of its position, J&J contends that "the statements on the label are true" given that the Complaint admits that J&J conducted tests involving the Bedtime Products.[78]  This argument fails, however, as the Complaint's core allegation is that J&J tested the Bedtime Products as part of the three-step routine but never tested the efficacy of the Bedtime Products alone.[79]  J&J also suggests that Hidalgo could not have been misled because she followed the three-step routine described on the back of the Bedtime Products bottles.  That Hidalgo did, in fact, implement J&J's recommended routine does not undermine her allegation that she and other consumers believed that the Bedtime Products themselves were "clinically proven."  Nor would it be appropriate for the Court to find at this stage, as J&J urges, that the disclosure of the three-step routine on the back of Bedtime Products bottles and other advertising materials obviates the possibility that the "clinically proven" language was misleading.[80]

---

[78]    Defendant's Memorandum of Law in Support of Its Motion to Dismiss and Strike Class Allegations ("Def. Mem.") at 11.

[79]    *See* Compl. ¶¶ 35-36, 38.

[80]    *See Goldemberg*, 8 F. Supp. 3d at 478.

### 2.   Unjust Enrichment Claim

Hidalgo's remaining claim for unjust enrichment, however, must be dismissed because "'it simply duplicates, or replaces, a conventional contract or tort claim.'"[81] As Hidalgo herself concedes, the "unjust enrichment claim is . . . 'duplicative' if the Court finds that [she] has an actionable 'conventional contract or tort claim,' *i.e.*, a valid Section 349 claim."[82] Accordingly, the unjust enrichment claim – which is based on identical facts as the Section 349 claim – is dismissed with prejudice.

## VI.   CONCLUSION

For the foregoing reasons, J&J's motions to dismiss under Rules 12(b)(1) and 12(b)(6) are GRANTED in part and DENIED in part, and Hidalgo's request for injunctive relief and unjust enrichment claim are dismissed with prejudice. J&J's Rule 12(f) motion to strike is DENIED in full.

SO ORDERED:

---

[81]   Def. Mem. at 16 (quoting *Corsello*, 18 N.Y.3d at 790).

[82]   Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and Strike Class Allegations at 23 (citing *Trend & Style*, 2015 WL 4190746, at \*5-\*6).

22

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 8, 2015

## - Appearances -

**For Plaintiff**:

Kim E. Richman, Esq.
Richman Law Group
195 Plymouth Street
Brooklyn, NY 11201
(212) 687-8291

James C. Shah, Esq.
Natalie Finkelman Bennett, Esq.
Shepherd, Finkelman, Miller & Shah LLP
35 East State Street
Media, PA 19063
(610) 891-9880

Jayne A. Goldstein, Esq.
Pomerantz LLP
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
(954) 315-3454

**For Defendant**:

V. David Rivkin, Esq.
Mark A. Neubauer, Esq.
Carlton Fields Jorden Burt LLP
405 Lexington Avenue, 36th Floor
New York, NY 10174
(212) 380-9605